***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties prior to the deputy commissioner hearing in a Pre-Trial Agreement as
 STIPULATIONS
1. On July 26, 1999, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Plaintiff was employed by defendants on July 26, 1999, the date of plaintiff's alleged injury by accident.
3. On July 26, 1999, ITT Specialty Risk Services, Inc. was the carrier on the risk.
4. Plaintiff alleges that she injured her back on July 26, 1999, sustaining a L1 burst fracture requiring posterior thoracolumbar stabilization from T10 to L3.
5. Plaintiff last worked for defendants on July 26, 1999.
6. Plaintiff's average weekly wage will be determined by a Form 22 Wage Chart.
7. The parties stipulated into evidence as Stipulated Exhibit 1, a packet of plaintiff's medical records including those from Rowan Neurosurgical Associates, South Rowan Family Practice, Rowan Diagnostic Clinic, Rowan Regional Medical Center and Sleep Medicine Center.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing, plaintiff was 50 years old. Plaintiff completed the eighth grade and holds a certification as a nursing assistant. Prior to her employment with defendant-employer, plaintiff was employed as a sewing machine operator and worked in various cotton mills.
2. In August 1994, plaintiff became employed with defendant-employer as an in-home caregiver for various clients of defendant-employer. As a caregiver, plaintiff had a variety of job duties relating to the care of clients including taking vital signs, helping clients with personal hygiene, assisting with activities such as ambulating, providing a safe environment in the home, and assisting with care of catheters. Plaintiff also was required to make meals for clients for breakfast, lunch and dinner as well as snacks, perform household chores such as cleaning and laundering, as well as transporting the client and grocery shopping if requested.
3. Plaintiff worked nine hours per day, seven days per week and earned $7.60 per hour.
4. While working for defendant-employer plaintiff was assigned as a caregiver in the home of Ms. Nancy Withers.
5. On July 26, 1999, after assisting Ms. Withers out of bed and preparing her breakfast, plaintiff took Ms. Withers' dog outside and, while outside in the yard, plantiff decided to pick a pear from the pear tree for herself and Ms. Withers. Plaintiff climbed into the tree to retrieve a pear and, as she was coming down, she fell from the tree.
6. As a result of plaintiff's fall, she suffered a L1 burst fracture requiring a posterior thoracolumbar stabilization from T10 through L3. Following plaintiff's fall, plaintiff was treated at Rowan Regional Medical Center by Dr. Ranjan S. Roy. Plaintiff's surgery was performed by Dr. Roy and she has continued to be treated by him since that time.
7. Plaintiff regularly served fruit to Ms. Withers as a part of her job.
8. As an employee for defendant-employer, plaintiff was to provide services pursuant to the home health certification and plan of care which included plaintiff's duties, responsibilities and authorized activities. The plan authorized plaintiff to fix meals for Ms. Withers and to go grocery shopping.
9. On July 26, 1999, as plaintiff climbed the pear tree to obtain a pear, plaintiff had not so deviated from her job duties as to have abandoned her job. Plaintiff's activities in obtaining and preparing food for Ms. Withers was in the course and scope of her employment with defendant-employer. Although defendants suggest that scaling a tree is not the same as grocery shopping, the Full Commission, under the facts of this case, disagrees. The pear tree is part of nature's bounty and may be viewed as nature's grocery store. The taking of the pear was thereby consistent with plaintiff's duties to acquire and prepare food for Ms. Withers. Plaintiff had not deviated from her work duties at the time and place of her duties so as to depart from the course and scope of her employment.
10. The Form 22 filed with the Commission shows that plaintiff earned $17,226.60 for the 52 weeks prior to her injury for an average weekly wage of $331.28 and a compensation rate of $225.85.
 ***********
The foregoing stipulations and findings of fact engender the following additional
 CONCLUSIONS OF LAW
1. On July 26, 1999, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer when she fell from a pear tree while picking a pear for the consumption of her employer's patient. N.C.G.S. § 97-2(6);cf. Dehart v. Betty Breaux Personnel, Inc., 535 So.2d 456 (La.App. 1988) (fall from pear tree compensable). An injury arises out of and in the course of employment when the employee is engaged in some activity which she is authorized to undertake and which is calculated to further, directly or indirectly, the employer's business. See Perry v. AmericanBakeries Co., 262 N.C. 272, 136 S.E.2d 643 (1964). Acquiring the pear for Ms. Withers' consumption was within plaintiff's work duties. Although scaling a tree perhaps was not the employer's anticipated means for acquiring produce, the law does not require that the means of the injury be foreseen. See Withers v. Black, 230 N.C. 428, 53 S.E.2d 668 (1949). The scaling of the tree for produce was not a deviation from plaintiff's duties to obtain and prepare food for employer's patient.
2. Plaintiff is entitled to receive and defendant is required to pay total temporary disability benefits at the rate of $223.85 until such time as she returns to work or further order of the Commission. N.C.G.S. § 97-29.
3. Plaintiff is entitled to receive and defendants are responsible to pay for reasonable and necessary medical care for the compensable injury to plaintiff's lumbar and thoracic spine, subject to the limitations of Section 97-25.1. N.C.G.S. §§ 97-2(19), 97-25.
 ***********
The foregoing stipulations, findings of fact and conclusions of law engender the following
 AWARD
1. Defendants shall pay to plaintiff $223.85 per week for temporary total disability benefits commencing on July 27, 1999, and continuing until plaintiff returns to employment or other Order of the Commission. Benefits which have accrued shall be paid in a lump sum. These benefits are subject to attorney's fees approved below.
2. Plaintiff's counsel is entitled to recover 25% of the benefits award in paragraph 1 above for representation of plaintiff in this action. Defendant shall withhold 25% of the accrued benefits and pay this sum directly to plaintiff's counsel. For continuing benefits, defendants shall pay every fourth check to plaintiff's counsel.
3. Defendants shall provide medical care for the compensable injury to plaintiff's lumbar and thoracic spine, subject to the limitations of Section 97-25.1.
4. Defendant shall pay all costs.
 S/_____________________________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DISSENTING:
S/_____________________________ BUCK LATTIMORE CHAIRMAN